**UNITED STATES DISTRICT
COURT SOUTHERN DISTRICT
OF FLORIDA MIAMI DIVISION**

JANIUSRY CABRERA, DAYANA AGUIAR, ALEXA PIERRE-LOUIS, GRACIELA CUEVAS, ANNYCHRISTINA DOWNS, MARLIZ NEVAREZ, JESSICA THOMAS, TEQUILLA RAMEY, YITSEL VEGA, ANGELETE WILLIAMS, KRISTINA WOODMANSEE individually and on behalf of all others similarly situated,

        Plaintiffs,

**v.**

BT'S ON THE RIVER, LLC dba BOOBY TRAP ON THE RIVER, a Florida Limited Liability Company; BTS NORTH, INC. dba BOOBY TRAP DORAL AREA, a Florida Corporation; BOOBY TRAP, INC., dba BOOBY TRAP POMPANO BEACH a Florida Corporation; PHILIP GORI, an individual; P.T.G. ENTERTAINMENT, INC. dba BOOBY TRAP, a Florida Corporation; GREGG BERGER, an individual; B&G OPA LAND HOLDINGS, LLC dba BOOBY TRAP, a Florida Limited Liability Company; THE GORI FAMILY LIMITED PARTNERSHIP dba BOOBY TRAP, a Florida Limited Partnership; PG INVESTMENTS, INC., a Florida Corporation; PG INVESTMENTS II, INC., a Florida Corporation; MIKE BRUSO, an individual; MIKE ARZA, an individual.

        Defendants.

_____/

Case No.:

**<u>COLLECTIVE ACTION</u>**

**<u>COMPLAINT FOR DAMAGES</u>**

1. **Failure to Pay Minimum Wages, 29 U.S.C. § 206;**
2. **Failure to Pay Overtime Wages, 29 U.S.C. § 207; and**
3. **Unlawful Taking of Tips, 29 U.S.C. § 203**
4. **Forced Tipping 29 C.F.R. §531.35**
5. **Violation of Florida Constitution, ART. X, §24**

<u>DEMAND FOR JURY TRIAL</u>

**<u>PLAINTIFFS' ORIGINAL COMPLAINT</u>**

    Plaintiffs Janiusry Cabrera, Dayana Aguiar, Alexa Pierre-Louis, Graciela Cuevas,

Annychristina Downs, Marliz Nevarez, Jessica Thomas, Tequilla Ramey, Yitsel Vega, Angelete

Williams, Kristina Woodmansee ("Plaintiffs"), individually and on behalf of all others similarly situated, allege the following upon information and belief, based upon investigation of counsel, published reports, and personal knowledge:

<strong>I. NATURE OF THE ACTION</strong>

1. Plaintiffs allege causes of action against defendants BT'S ON THE RIVER, LLC dba BOOBY TRAP ON THE RIVER, a Florida Limited Liability Corporation, BTS NORTH, INC. dba BOOBY TRAP DORAL AREA, a Florida Corporation, BOOBY TRAP, INC., a Florida Corporation; PHILLIP GORI, an individual, P.T.G. ENTERTAINMENT, INC. dba BOOBY TRAP dba BOOBY TRAP POMPANO BEACH, a Florida Corporation, PHILIP GORI, an individual, P.T.G ENTERTAINMENT, INC., dba BOOBY TRAP, a Florida Corporation, GREGG BERGER, an individual, B&G OPA LAND HOLDINGS, LLC dba BOOBY TRAP, a Florida Limited Liability Corporation, THE GORI FAMILY LIMITED PARTNERSHIP dba BOOBY TRAP, a Florida Limited Partnership, PG INVESTMENTS, INC., a Florida Corporation, PG INVESTMENTS II, INC., a Florida Corporation, MIKE BRUSO, an individual and MIKE ARZA, an individual, (collectively, "Defendants" or "Booby Trap") for damages due to Defendants evading the mandatory minimum wage and other provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*("FLSA"), illegally absconding with Plaintiffs' tips.

2. Defendants own and operate strip clubs named Booby Trap on The River, Booby Trap South Miami, Booby Trap Pompano and Booby Trap Doral. Plaintiff Janiusry Cabrera worked from approximately July 20, 2017 through June 11, 2020 at Booby Trap Doral Area. Plaintiff Dayana Aguiar worked at BT's Gentlemen's club from. February 1, 2020 through March 2022. Plaintiff Alexa Pierre-Louis worked at Booby Trap on the River from 2014-2018. Plaintiff Graciela Cuevas worked at Booby Trap on the River from 2018-2020. Plaintiff Annychristina Downs worked at Booby Trap on the River and Booby Trap Doral Area from 2013-2019. Plaintiff

Marliz Nevarez worked at Booby Trap Pompano Beach from 2009 through December 2019. Plaintiff Jessica Thomas started working at the Booby Trap on the River in 2017. Plaintiff Tequilla Ramey worked at Booby Trap on the River and Booby Trap Doral Area from 2009 through 2017. Plaintiff Yitsel Vega worked at Booby Trap Doral Area from 2018-2020. Plaintiff Angeleta Williams worked from July 5, 2013 through July 10, 2019. Plaintiff Kristina Woodmansee worked at Booby Trap Pompano Beach from 2017 through 2020. These causes of action arise from Defendants' willful actions while Plaintiffs were employed by Defendants. These actions still continue to this day. Throughout their employment with Defendants, Plaintiffs have been denied minimum wage payments as part of Defendants' scheme to classify Plaintiffs and other dancers/entertainers as "independent contractors." As the Department of Labor explained in a recent Administrative Interpretation:

> Misclassification of employees as independent contractors is found in an increasing number of workplaces in the United States, in part reflecting larger restructuring of business organizations. When employers improperly classify employees as independent contractors, the employees may not receive important workplace protections such as the minimum wage, overtime compensation, unemployment insurance, and workers' compensation. Misclassification also results in lower tax revenues for government and an uneven playing field for employers who properly classify their workers. Although independent contracting relationships can be advantageous for workers and businesses, some employees may be intentionally misclassified as a means to cut costs and avoid compliance with labor laws.[1]

As alleged in more detail below, that is exactly what the Defendants are doing in this case.

3.      Plaintiff Cabrera worked at Defendants' principal place of business located at 5325 NW 77th Ave., Doral, Florida 33166.

4.      Plaintiff Aguiar worked at Defendants' principal place of business located at 5922 S. Dixie Highway, S. Miami, Florida 33143.

5.      Plaintiff Pierre-Louise worked at Defendants' principal place of business located at

---

[1] United States Department of Labor, Administrator's Interpretation No. 2015-1 (July 14, 2015).

3615 NW S River Drive, Miami, Florida 33142.

6.      Plaintiff Cuevas worked at Defendants' principal place of business located at 3615 NW S River Drive, Miami, Florida 33142.

7.      Plaintiff Downs worked at Defendants' principal place of business located at 3615 NW S River Drive, Miami, Florida 33142 and at 5325 NW 77th Ave., Doral, Florida 33166.

8.      Plaintiff Nevarez worked at Defendants' principal place of business located at 2840 Hammondville Rd., Pompano Beach, Fl 33069.

9.      Plaintiff Thomas worked at Defendants' principal place of business located at 3615 NW S River Drive, Miami, Florida 33142.

10.     Plaintiff Ramey worked at Defendants' principal place of business located at 3615 NW S River Drive, Miami, Florida 33142, and at 5325 NW 77th Ave., Doral, Florida 33166.

11.     Plaintiff Vega worked at Defendants' principal place of business located at 5325 NW 77th Ave., Doral, Florida 33166.

12.     Plaintiff Williams worked at Defendants' principal place of business located at 2840 Hammondville Rd., Pompano Beach, Fl 33069.

13.     Plaintiff Woodmansee worked at Defendants' principal place of business located at 3615 NW S River Drive, Miami, Florida 33142, and at 5325 NW 77th Ave., Miami, Florida 33166

14.     Defendants failed to pay Plaintiffs minimum wages for all hours worked in violation of 29 U.S.C. §§ 206 of the FLSA.

15.     Furthermore, Defendants' practice of failing to pay tipped employees pursuant to 29 U.S.C. § 203(m), violates the FLSA's minimum wage provision. *See* 29 U.S.C. § 206.

16.     Defendants also charged Plaintiffs to work. Yes, in the United States, Plaintiffs were required to pay just to work. This illegal kickback was designated a house fee and would

range in costs/tax to the Plaintiffs depending on the time they arrived. So, it was also used as a method of control. This violates the "free and clear" requirement of 29 C.F.R. § 531.35.

17.     Defendants also would have the Plaintiffs and other dancers subsidize the clubs' employment costs by forcing them to tip DJs, managers, security and other personnel. The Defendants saved labor costs by having one set of their employees pay another set.

18.     Defendants took a percentage of the gratuities and tips earned by the Plaintiffs, also in violation of the FLSA.

19.     Plaintiffs bring a collective action to recover the unpaid overtime compensation and minimum wage owed to them individually and on behalf of all other similarly situated employees, current and former, of Defendants. Members of the Collective Action are hereinafter referred to as "FLSA Class Members."

20.     As a result of Defendants' violations, Plaintiffs and the FLSA Class Members seek to recover double damages for failure to pay minimum wage, overtime liquidated damages, interest, and attorneys' fees.

## II.      PARTIES

21.     At all times relevant, Plaintiffs were individual adult residents of the State of Florida. Furthermore, Plaintiffs were employed by Defendants and qualify as "employees" of Defendants as defined by the FLSA, 29 U.S.C. § 203(e)(1). Their consents to this action are attached hereto as Exhibit 1.

22.     The FLSA Class Members are all current and/or former exotic dancers who worked at Booby Trap on the River located at 3615 NW S River Drive, Miami, Florida 33142, Booby Trap South Miami located at 5922 S. Dixie Highway, S. Miami, FL 33143, Booby Trap Pompano Beach located at 2840 Hammondville Road, Pompano Beach, FL 33069 and Booby Trap Doral, located at 5325 NW 77th Avenue, Miami, Florida 33166 at any time

23.     Defendant BT'S ON THE RIVER, LLC dba BOOBY TRAP ON THE RIVER ("BT River") is Florida Limited Liability Company with its principal place of business located at 3615 NW S River Drive, Miami, Florida 33142. At all times mentioned herein, BT River was an "employer" or "joint employer" as defined by the FLSA, 29 U.S.C. § 203(d) and (g). BT River may be served via its agent for service of process, Gregg Berger, 5325 NW 77 Ave., Miami, FL 33166.

24.     Defendant BTS NORTH, INC. dba BOOBY TRAP DORAL AREA ("BT Doral") is a Florida Corporation with its principal place of business located at 5325 NW 77th Avenue, Miami, Florida 33166. At all times mentioned herein, BT Doral was an "employer" or "joint employer" as defined by the FLSA, 29 U.S.C. § 203(d) and (g). BT Doral may be served via its agent for service of process, Gregg Berger, 5325 NW 77 Ave., Miami, FL 33166.

25.     BT'S GENTLEMENS' CLUB-SOUTH MIAMI ("BT'S") is Florida Limited Liability Company with its principal place of business located at 5922 S. Dixie Highway, South Miami, FL 33143. At all times mentioned herein, BT'S was an "employer" or "joint employer" as defined by the FLSA, 29 U.S.C. § 203(d) and (g). BT'S may be served via its agent for service of process, Gregg Berger, 5325 NW 77 Ave., Miami, FL 33166.

26.     Defendant BOOBY TRAP, INC. ("BT, Inc.") is a Florida Corporation with its principal place of business located at 2840 Hammondville Road, Pompano Beach, Florida 33069. At all times mentioned herein, BT, Inc. was an "employer" or "joint employer" as defined by the FLSA, 29 U.S.C. § 203(d) and (g). BT, Inc.  may be served via its agent for service of process, Gregg Berger, 5325 NW 77 Ave., Miami, FL 33166.

27.     Defendant PHILLIP GORI ("Gori") was/is one of the main manager(s)/owner(s) who executed the policies regarding payment to dancers and management of dancers, including

Plaintiffs. Gori resides at 195 W. Alexander Palm Road, Boca Raton, Florida 33432.

28.     Defendant P.T.G. ENTERTAINMENT, INC. dba BOOBY TRAP ("P.T.G.") is a Florida Corporation, owned/controlled by Gori. P.T.G.'s principal place of business is located at 2840 Hammondville Road, Pompano Beach, Florida 33069. At all times mentioned herein, P.T.G. was an "employer" or "joint employer" as defined by the FLSA, 29 U.S.C. § 203(d) and (g). P.T.G. may be served via its agent for service of process, Gregg Berger, 5325 NW 77 Ave., Miami, FL 33166.

29.     Defendant GREGG BERGER ("Berger") was/is one of the main manager(s)/owner(s) who executed the policies regarding payment to dancers and management of dancers, including Plaintiffs. Berger resides at 3500 Mystic Pointe Drive, Aventura, Florida 33180.

30.     Defendant B&G OPA LAND HOLDINGS, LLC dba BOOBY TRAP ("B&G") is a Florida Limited Liability Company with its principal place of business located at 5325 NW 77th Avenue, Miami, Florida 33166. At all times mentioned herein, B&G was an "employer" or "joint employer" as defined by the FLSA, 29 U.S.C. § 203(d) and (g). B&G may be served via its agent for service of process, Gregg Berger, 5325 NW 77 Ave., Miami, FL 33166.

31.     Defendant THE GORI FAMILY LIMITED PARTNERSHIP dba BOOBY TRAP ("Gori LP") is a Florida Limited Partnership with its principal place of business is located 2840 Hammondville Road, Pompano Beach, Florida 33069. At all times mentioned herein, Gori LP was an "employer" or "joint employer" as defined by the FLSA, 29 U.S.C. § 203(d) and (g) and may be served via its agent for service of process, Gregg Berger, 5325 NW 77 Ave., Miami, FL 33166.

32.     Defendant PG INVESTMENTS, INC. ("PG I") is a Florida Corporation with its principal place of business is located 2840 Hammonville Road, Pompano Beach, Florida 33069. At all times mentioned herein, PG I was an "employer" or "joint employer" as defined by the

FLSA, 29 U.S.C. § 203(d) and (g) and may be served via its agent for service of process, Gregg Berger, 5325 NW Ave., Miami, FL, 33166.

33.     Defendant PG INVESTMENTS II, INC. ("PG II") is a Florida Corporation with their principal place of business is located 2840 Hammondville Road, Pompano Beach, Florida 33069. At all times mentioned herein, PG I was an "employer" or "joint employer" as defined by the FLSA, 29 U.S.C. § 203(d) and (g) and may be served via its agent for service of process, Gregg Berger, 5325 NW 77 Ave., Miami, FL 33166

34.     Defendant Mike Bruso is one of the manger/owners who executed the policies regarding payment to dancers and management of dancers, including Plaintiffs. Mike Bruso may be served at 5325 NW 77 Ave., Miami, FL 33166.

35.     Defendant Mike Arza is one of the manger/owners who executed the policies regarding payment to dancers and management of dancers, including Plaintiffs. Mike Bruso may be served at 5325 NW 77 Ave., Miami, FL 33166.

36.     Gori, Bruso and Arza and Berger acted directly or indirectly on behalf of Booby Trap, and, at all times mentioned herein were "employer(s)" or "joint employer(s)" of Plaintiffs within the meaning of the FLSA. They exerted operational and management control over Booby Trap, including day to day management. They were, and are, frequently present at, owned, directed, controlled, and managed the operations at Booby Trap. They also controlled the nature, pay structure, and employment relationship of Plaintiffs and the FLSA Class Members. Gori and Berger had at all times relevant to this lawsuit, the authority to hire and fire employees at Booby Trap, the authority to direct and supervise the work of employees, the authority to sign on the business' checking accounts, including payroll accounts, and the authority to make decisions regarding employee compensation and capital expenditures. Additionally, they were responsible

for the day-to-day affairs of Booby Trap. In particular, they were responsible for determining whether Booby Trap complied with the FLSA.

37.     The true names, capacities, or involvement, whether individual, corporate, governmental, or associate, of all managers and owners of the Defendants named are unknown to Plaintiffs. Plaintiffs pray for leave to amend this Complaint to show their true names and capacities when the same have been finally determined. Plaintiffs are informed and believe, and upon such information and belief alleges thereon, that each of the unknown Defendants is negligently, intentionally, strictly liable, or otherwise legally responsible in some manner for the events and happenings herein referred to, and negligently, strictly liable intentionally or otherwise caused injury and damages proximately thereby to Plaintiffs, as is hereinafter alleged.

38.     At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(r)(1) of the FLSA because they have had employees at their club engaged in commerce, which has travelled in interstate commerce. Moreover, because of Defendants' interrelated activities, they function in interstate commerce. 29 U.S.C. § 203(s)(1).

39.     Furthermore, Defendants have had, and continue to have, an annual gross business volume in excess of the statutory standard.

40.     At all material times during the three (3) years prior to the filing of the original action, Defendants categorized all dancers/entertainers employed by Defendants as "independent contractors" and have failed and refused to pay wages or compensation to such dancers/entertainers. Plaintiffs were individual employees who engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206.

41.     Plaintiffs are informed and believe that, at all relevant times herein, Defendants

engaged in the acts alleged herein and/or condoned, permitted, authorized, and/or ratified the conduct of its employees and agents, and other Defendants and are vicariously or strictly liable for the wrongful conduct of its employees and agents as alleged herein.

42.     Plaintiffs are informed and believe, and on that basis allege that, each of the Defendants acted, in all respects pertinent to this action, as the agent or employee of each other, and carried out a joint scheme, business plan, or policy in all respect thereto and, therefore, the acts of each of these Defendants are legally attributable to the other Defendants, and that these Defendants, in all respects, acted as employers and/or joint employers of Plaintiffs in that each of them exercised control over their wage payments and control over their duties.

43.     Plaintiffs are informed and believe, and on that basis allege that, at all relevant times, each and every Defendant has been the agent, employee, representative, servant, master, employer, owner, agent, joint venture, and alter ego of each of the other and each was acting within the course and scope of his or her ownership, agency, service, joint venture and employment.

44.     At all times mentioned herein, each and every Defendant was the successor of the other and each assumes the responsibility for the acts and omissions of all other Defendants.

### III.     VENUE AND JURISDICTION

45.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 because this action arises under the FLSA, 29 U.S.C. §§ 201, *et seq*.

46.     Venue is proper in this District because all or a substantial portion of the events forming the basis of this action occurred in this District. Defendants' club is located in this District and Plaintiffs worked in this District.

### IV.    ALLEGATIONS COMMON TO ALL CAUSES OF ACTION
### (Against all Defendants)

### A.    FACTUAL ALLEGATIONS

47.    Defendants operate adult-oriented entertainment facilities located at 3615 NW S River Drive, Miami, Florida 33142, 5922 S. Dixie Highway, South Miami, Florida 33143, 2840 Hammondville Road, Pompano Beach, Florida 33069 and at 5325 NW 77th Avenue, Miami, Florida 33166.

48.    At all times mentioned herein, Defendants were "employer(s)" or "joint employer(s)" of Plaintiffs.

49.    At all times during the three (3) years prior to the filing of the instant action, Defendants categorized all dancers/entertainers employed by Defendants as "independent contractors" and have failed and refused to pay wages to such dancers.

50.    At all times relevant to this action, Defendants exercised a great deal of operational and management control over the subject clubs, particularly in the areas of terms and conditions of employment applicable to dancers and entertainers.

51.    Plaintiff Cabrera was employed by Defendants from approximately July 20, 2017 through June 11, 2020. Plaintiff Aguiar was employed by Defendants from approximately February 2, 2020 through March 2022. Plaintiff Pierre-Louis was employed by Defendants from approximately 2014-2018. Plaintiff Cuevas was employed by Defendants from 2018-2020. Plaintiff Downs was employed by Defendants from approximately 2013-2019. Plaintiff Nevarez was employed by Defendants from approximately 2009 though December 2019. Plaintiff Thomas began working for Defendants in approximately 2017. Plaintiff Ramey was employed by Defendants from approximately 2009-2017. Plaintiff Vega was employed by Defendants from approximately 2018-2020. Plaintiff Williams was employed by Defendants from approximately

July 5, 2013 until July 10, 2019. Plaintiff Woodmansee was employed by Defendants from approximately 2017-2020.

52.     The primary duty of an entertainer is to dance and entertain customers, and give them a good experience. Specifically, an entertainer performs stage and table dances, and entertains customers on an hourly basis.

53.     Stated differently, entertainers dance on stage, perform table dances, and entertain customers in VIP rooms, all while nude or semi-nude.

54.     Plaintiffs worked and performed at the adult-oriented entertainment facilities multiple shifts per week. Plaintiffs were an integral part of Defendants' business which operated solely as an adult-oriented entertainment facilities featuring nude or semi-nude female entertainers.

55.     Defendants did not pay entertainers on an hourly basis.

56.     Defendants exercised significant control over Plaintiffs during their shifts and would demand that Plaintiffs stay until late in the morning if they worked.

57.     Defendants set prices for all VIP performances.

58.     Defendants set the daily cover charge for customers to enter the facility and had complete control over which customers were allowed in the facility.

59.     Defendants controlled music for Plaintiffs' performances.

60.     Defendants controlled the means and manner in which Plaintiffs could perform.

61.     Defendants placed Plaintiffs on a schedule.

62.     Defendants had the authority to suspend, fine, fire, or otherwise discipline entertainers for non-compliance with their rules regarding dancing.

63.     Defendants actually suspended, fined, fired, or otherwise disciplined entertainers for non-compliance with their rules regarding dancing.

64.     Although Defendants allowed entertainers to choose their own costumes, Defendants reserved the right to decide what a particular entertainer was allowed to wear on the premises. In order to comply with Booby Trap's dress and appearance standards, Plaintiffs typically expended approximately one (1) hour of time each shift getting ready for work without being paid any wages for such time getting ready.

65.     Plaintiffs were compensated exclusively through tips from Defendants' customers. That is, Defendants did not pay Plaintiff whatsoever for any hours worked at their establishment.

66.     Defendants also required Plaintiffs to share their tips with Defendants, and other non-service employees who do not customarily receive tips, including the managers, disc jockeys, and the bouncers.

67.     Defendants are in violation of the FLSA's tipped-employee compensation provision, 29 U.S.C. § 203(m), which requires employers to pay a tipped employee a minimum of $2.13 per hour. Defendants also violated 29 U.S.C. § 203(m) when they failed to notify the Plaintiffs about the tip credit allowance (including the amount to be credited) before the credit was utilized. That is, Defendants' exotic dancers were never made aware of how the tip credit allowance worked or what the amounts to be credited were. Furthermore, Defendants violated 29 U.S.C. § 203(m) because they did not allow Plaintiffs to retain all of their tips and instead required that they divide their tips amongst other employees who do not customarily and regularly receive tips. Because Defendants violated the tip-pool law, Defendants lose the right to take a credit toward minimum wage.

68.     Defendants exercised significant control over Plaintiffs through written and unwritten policies and procedures. Defendants had visibly posted in the employees' locker room the written employee rules for late arrivals and early leaves and the corresponding fees for which

performers would be responsible.

69.     Defendants provided and paid for all advertising and marketing efforts undertaken on behalf of Defendants.

70.     Defendants paid for the buildings used by Defendants' maintenance of the facilities, the sound systems, stages, lights, beverages and inventory used at the facilities.

71.     Defendants made all hiring decisions regarding wait staff, security, entertainers, managerial and all other employees on the premises.

72.     Defendants' opportunity for profit and loss far exceeded Plaintiffs' opportunity for profit and loss from work at Defendants' clubs.

73.     Nude dancing is an integral part of Defendants' operations. Defendants' advertising and logo prominently displays nude dancing for its customers. Booby Trap and all of its locations are well known as a "strip club."

74.     Defendants need entertainers to successfully and profitably operate the Booby Trap business model.

75.     The position of entertainer requires no managerial skill of others.

76.     The position of entertainer requires little other skill or education, formal or otherwise.

77.     The only requirements to become an entertainer at Booby Trap are "physical attributes" and the ability to dance seductively. Plaintiffs did not have a formal interview but instead were glanced over "up and down" and participated in a brief audition by the manager before being offered an employment opportunity. The amount of skill required is more akin to an employment position than that of a typical independent contractor. Defendants do not require prior experience as an entertainer or any formal dance training as a job condition or prerequisite to

employment. Defendants do not require the submission of an application or a resume as part of the hiring process. In fact, Plaintiffs have little or no formal dance training and experience before auditioning to dance at Booby Trap.

78.     Defendants failed to maintain records of wages, fines, fees, tips and gratuities and/or service charges paid or received by entertainers.

79.     Plaintiffs were not paid an hourly minimum wage or *any* hourly wage or salary despite being present at Defendants' facilities and required to work and entertain its customers at any time during an eight-plus (8+) hour work shift.

80.     Plaintiffs were not paid overtime wages at one-and-a-half (1½) times the regular minimum wage rate for *any* hours worked despite being present at Defendants' facilities and required to work and entertain its customers for longer than eight (8) hours per shift.

81.     Plaintiffs were not paid an hourly minimum wage for the typical one (1) hour of time expended prior to each shift to get ready for work, including applying makeup and hair, and to comply with Defendants' dress and appearance standards. Plaintiffs estimate that they spent approximately five hundred U.S. Dollars ($500.00) annually on makeup, hair-related expenses, and outfits.

82.     Plaintiffs were not paid an hourly minimum wage for the time they were required to wait at Booby Trap until the premises and the parking lot were cleared of customers.

83.     The FLSA Class Members had the same pay structure and were under the same controls as Plaintiffs.

84.     Plaintiffs and FLSA Class Members would work over forty (40) hours in some weeks each worked for Defendants.

85.     Defendants have never paid Plaintiffs and the FLSA Class Members any amount as

wages whatsoever, and have instead unlawfully required Plaintiffs and FLSA Class Members to pay them for the privilege of working.

86.     The only source of monies received by Plaintiffs (and the class they seek to represent) relative to their employment with Defendants came in the form of gratuities received directly from customers, a portion of which Plaintiffs and the FLSA Class Members were required to pay to Defendants.

87.     Although Plaintiffs and the FLSA Class Members are required to and do in fact frequently work more than forty (40) hours per workweek, they are not compensated at the FLSA mandated time-and-a-half rate for hours in excess of forty (40) per workweek. In fact, they receive no compensation whatsoever from Defendants and thus, Defendants violate the minimum wage requirement of FLSA. *See* 29 U.S.C. § 206.

88.     Defendants' method of paying Plaintiffs in violation of the FLSA was willful and was not based on a good faith and reasonable belief that its conduct complied with the FLSA. Defendants misclassified Plaintiffs with the sole intent to avoid paying them in accordance to the FLSA; the fees and fines described herein constitute unlawful "kickbacks" to the employer within the meaning of the FLSA, and Plaintiffs are entitled to restitution of such fines and fees.

89.     Plaintiffs and FLSA Class Members who worked at Booby Trap performed precisely the same job duties - dancing and entertaining at Booby Trap.

90.     Plaintiffs and FLSA Class Members who worked at Booby Trap during the applicable limitations period(s) were subject to the same work rules established by the Defendants as identified above.

91.     Plaintiffs and FLSA Class Members at Booby Trap were subject to the terms and conditions of employment and the same degree of control, direction, supervision, promotion and

investment imposed or performed by Defendants.

92.     Plaintiffs and FLSA Class Members at Booby Trap during the applicable limitations period(s) were subject to the same across-the-board, uniformly applied corporate policy mandated by Defendants.

93.     Plaintiffs and the FLSA Class Members at Booby Trap, during the applicable limitations period, were subject to the same fees and fines imposed by Defendants.

94.     As a result of Defendants' across-the-board, standard operating procedure of mischaracterizing dancers/entertainers as "independent contractors" and their consequent failure to pay any wages or compensation whatsoever, it is a certainly that numerous other current and former dancers and entertainers who worked at Booby Trap during the applicable limitations period would elect to participate in this action if provided notice of same.

95.     Upon information and belief, more than one hundred (100) dancers and entertainers have worked at Booby Trap during the three (3) to five (5) years prior to the filing of this action.

96.     Plaintiffs are "similarly situated" to the 29 U.S.C. § 216(b) class of persons they seek to represent and will adequately represent the interests of the class.

97.     Plaintiffs have hired Counsel experienced in class actions and in collective actions under 29 U.S.C. § 216(b) who will adequately represent the class.

98.     Defendants failed to keep records of tips, gratuities and/or service charges paid to Plaintiffs or any other entertainer and failed to maintain and furnish wage statements to Plaintiffs.

99.     Federal law mandates that an employer is required to keep for three (3) years all payroll records and other records containing, among other things, the following information:

    a.     The time of day and day of week on which the employees' work week begins;

    b.     The regular hourly rate of pay for any workweek in which overtime compensation is due under section 7(a) of the FLSA;

c.   An explanation of the basis of pay by indicating the monetary amount paid on a per hour, per day, per week, or other basis;

d.   The amount and nature of each payment which, pursuant to section 7(e) of the FLSA, is excluded from the "regular rate";

e.   The hours worked each workday and total hours worked each workweek;

f.   The total daily or weekly straight time earnings or wages due for hours worked during the workday or workweek;

g.   The total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments;

h.   The dates, amounts, and nature of the items which make up the total additions and deductions;

i.   The total wages paid each pay period; and

j.   The date of payment and the pay period covered by payment. 29 C.F.R. 516.2, 516.5.

100.   Defendants have not complied with federal law and have failed to maintain such records with respect to Plaintiffs and the FLSA Class Members. Because Defendants' records are inaccurate and/or inadequate, Plaintiffs and the FLSA Class Members can meet their burden under the FLSA by proving that they, in fact, performed work for which they were improperly compensated, and produce sufficient evidence to show the amount and extent of their work "as a matter of a just and reasonable inference." *See, e.g., Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). Plaintiffs seek to put Defendants on notice that they intend to rely on *Anderson* to provide the extent of their unpaid work.

## B.   INDIVIDUAL LIABILITY UNDER THE FLSA

101.   In *Lamonica v. Safe Hurricane Shutters, Inc.*, the U.S. Court of Appeals for the Eleventh Circuit held that individuals can be liable for FLSA violations under an expansive interpretation of "employer" for directors and officers. *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299 (11th Cir. 2013). The FLSA defines "employer" as "any person acting directly or

indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Ninth Circuit stated that the definition of "employer" under FLSA is not limited by the common law concept of "employer" but "is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes."

102.     Where an individual exercises "control over the nature and structure of the employment relationship," or "economic control" over the relationship, that individual is an employer within the meaning of the FLSA, and is subject to liability. *Lambert v. Ackerley*, 180 F.3d 997 (9th Cir. 1999). Factors related to "economic control," which included ownership interest, operational control of significant aspects of the day-to-day functions, the power to hire and fire employees, determine salaries, and the responsibility to maintain employment records.

103.     Gori and Berger are individually liable for failing to pay Plaintiffs their wages.

## V.     COLLECTIVE ACTION ALLEGATIONS

104.     Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph as though fully set forth herein.

105.     Plaintiffs bring this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who were or are employed by Defendants as exotic dancers/entertainers at any time during the three (3) years prior to the commencement of this action, or when Plaintiffs first brought their claims to Defendants attention, to present.

106.     Plaintiffs have actual knowledge that FLSA Class Members have also been denied pay at the federally mandated minimum wage rate. That is, Plaintiffs worked with other dancers/entertainers at Defendants facilities. As such, they have firsthand personal knowledge of the same pay violations throughout Defendants' club. Furthermore, other exotic dancers/entertainers at Defendants' clubs. Furthermore, other exotic dancers/entertainers at

Defendants facilities have shared their similar pay violation experiences as those described in this Complaint.

107.     Other employees similarly situated to Plaintiffs work or have worked at Defendants facilities but were denied pay at the federally mandated minimum wage rate. The other employees were forced to pay house fees, subsidize Defendants employment costs by being forced to pay their tips to other employers, and then to pay a percentage of their tips to Defendants.

108.     Although Defendants permitted and/or required the FLSA Class Members to work in excess of forty (40) hours per workweek, Defendants have denied them full compensation for their hours worked over forty (40). Defendants have also denied them full compensation at the federally mandated minimum wage rate.

109.     FLSA Class Members perform or have performed the same or similar work as the Plaintiffs.

110.     FLSA Class Members regularly work or have worked in excess of forty (40) hours during a workweek.

111.     FLSA Class Members regularly work or have worked and did not receive minimum wage.

112.     FLSA Class Members are not exempt from receiving overtime and/or pay at the federally mandated minimum wage rate under the FLSA.

113.     As such, FLSA Class Members are similar to Plaintiffs in terms of job duties, pay structure, misclassification as independent contractors and/or the denial of overtime and minimum wage.

114.     The experiences of the Plaintiffs, with respect to their pay, are typical of the experiences of the FLSA Class Members.

115.     The specific job titles or precise job responsibilities of each FLSA Class Member does not prevent collective treatment.

116.     All FLSA Class Members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked at the federally mandated minimum wage rate.

117.     Although the exact number of damages may vary among FLSA Class Members, the damages for the FLSA Class Members can be easily calculated by a simple formula. The claims of all FLSA Class Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by the Defendants that caused harm to all FLSA Class Members.

118.     As such, Plaintiffs bring their FLSA claims as a collective action on behalf of the following class:

> **All of Defendants' current and former exotic dancers/entertainers who worked at the Booby Trap locations in Miami, Florida, Pompano Beach, Florida, S. Miami Beach, Florida and Doral, Florida at any time starting three years before this Complaint was filed.**

## VI.     DEFENDANTS WAIVED ARBITRATION

119.     Based on the undersigned counsel's experience, similarly situated Defendants typically have entertainers such as Plaintiffs and any opt-in plaintiffs sign agreements that require claims against Defendants to be brought through arbitration. Accordingly, Plaintiffs first requested to arbitrate the claims alleged in this Complaint with Defendants on December 14, 2021. Defendants did not respond to Plaintiffs' initial request to arbitrate or subsequent follow up requests. Thus, Defendants waived their right to arbitrate the claims alleged in this Complaint by failing to respond to Plaintiffs' requests.

120.     Alternatively, Defendants should be sanctioned by requiring them to pay for Plaintiffs' costs expended pursuing this lawsuit because Defendants failed to respond to Plaintiffs'

requests to arbitrate the claims alleged in this Complaint.

### VII. EQUITABLE TOLLING AND EQUITABLE ESTOPPEL

121. Amongst other FLSA violations described herein, Defendants misrepresented to Plaintiffs and potential opt-in plaintiffs that they did not have to pay them. Based on the undersigned counsel's experience, similarly situated Defendants typically have entertainers such as Plaintiffs and any opt-in plaintiffs sign agreements in order to mislead them into thinking they have given up their right to wages by agreement.

122. As such, the statute of limitations should be equitably tolled for Plaintiffs and any opt-in plaintiffs such that the date of filing for the purposes of the statute of limitations is held to be the date Plaintiffs first requested arbitration from Defendants—December 14, 2021—and/or Defendants should be equitably estopped from asserting a statute of limitations defense regarding any opt-in plaintiffs. At a minimum, the equitable tolling doctrine and equitable estoppel doctrine should apply to Plaintiffs and any opt-in plaintiffs who worked for Defendants from December 14, 2018 to the present.

### VIII. CAUSES OF ACTION

### <u>FIRST CAUSE OF ACTION</u>

**FAILURE TO PAY MINIMUM WAGES PURSUANT TO THE FLSA, 29 U.S.C. § 206**
**(By Plaintiffs Individually and on Behalf of the Collective Against All Defendants)**

123. Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

124. Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA.

125. Defendants operate an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), because it has employees engaged in commerce, and because its

annual gross volume of sales made is more than five hundred thousand U.S. Dollars ($500,000).

126.    Defendants failed to pay Plaintiffs the minimum wage in violation of 29 U.S.C. §206.

127.    Based upon the conduct alleged herein, Defendants knowingly, intentionally and willfully violated the FLSA by not paying Plaintiffs the minimum wage under the FLSA.

128.    Throughout the relevant period of this lawsuit, there is no evidence that Defendants' conduct that gave rise to this action was in good faith and based on reasonable grounds. In fact, Defendants continued to violate the FLSA long after it learned that its misclassification scheme and compensation policies were illegal.

129.    Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants, minimum wage compensation and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to 29 U.S.C. § 216(b).

## <u>SECOND CAUSE OF ACTION</u>

### UNLAWFUL TAKING OF TIPS IN VIOLATION OF THE FLSA, 29 U.S.C. § 203
**(By Plaintiffs Individually and on Behalf of the Collective Against All Defendants)**

130.    Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

131.    Plaintiffs customarily and regularly received more than thirty U.S. Dollars ($30.00) a month in tips and therefore is a tipped employee as defined in the FLSA, 29 U.S.C. § 203(t), *see also* 29 C.F.R. § 531.50.

132.    At all relevant times, each Defendants were "employer(s)" or "joint employer(s)" of Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203(d).

133.    Defendants are engaged in "commerce" and/or in the production of "goods" for

"commerce" as those terms are defined in the FLSA. Defendants operate enterprises engaged in commerce within the meaning for the FLSA, 29 U.S.C. § 203(s)(1), because they have employees engaged in commerce, and because its annual gross volume of sales made is more than five hundred thousand U.S. Dollars ($500,000).

134.    Under TIPA:

> [a]n employer may not keep tips received by its employees for any purpose including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not it takes a tip credit.

29 U.S.C. § 203.

135.    Defendants kept a portion of tips paid to Plaintiffs by Defendants' customers in the form of fees, fines, mandatory charges and other payments to management, house moms, disc jockeys, and floor men in violation of TIPA.

136.    Defendants required Plaintiffs to participate in an illegal tip pool, which included employees who do not customarily and regularly receive tips, and do not have more than a *de minimis*, if any, interaction with customers leaving the tips (such as the Club DJs, security, and management). *See* U.S. Dep't of Labor, Wage and Hour Division, "Fact Sheet # 15: Tipped employees under the Fair Labor Standards Act (FLSA)."

137.    The contribution the Defendants required Plaintiffs to make after each shift was arbitrary and capricious and the distribution was not agreed to by Plaintiffs or other dancers; but rather, was imposed upon Plaintiffs and other dancers.

138.    By requiring Plaintiffs to pool their tips with club management, including the individual Defendants named herein, Defendants "retained" a portion of the tips received by Plaintiffs in violation of the FLSA.

139.    Defendants did not make any effort, let alone a "good faith" effort, to comply with

the FLSA as it relates to compensation owed to Plaintiffs.

140.    At the time of their illegal conduct, Defendants knew or showed reckless disregard that the tip-pool which they required Plaintiffs to contribute included non-tipped employees and, therefore, was statutorily illegal. In spite of this, Defendants willfully failed and refused to pay Plaintiffs the proper amount of the tips to which they were entitled.

141.    Defendants' willful failure and refusal to pay Plaintiffs the tips they earned violates the FLSA.

142.    Defendants kept a portion of tips paid to Plaintiffs by Defendants' customers in the form of fees, fines, mandatory charges and other payments to management, house moms, disc jockeys, and door men in violation of TIPA.

143.    As a result of the acts and omissions of the Defendants as alleged herein, and pursuant to 29 U.S.C. §§ 216(b) and 260, Plaintiffs are entitled to damages in the form of all misappropriated tips, plus interest; as liquated damages, an amount equal to all misappropriated tips, mandatory attorneys' fees, costs, and expenses.

### THIRD CAUSE OF ACTION

#### ILLEGAL KICKBACKS, 29 C.F.R. § 531.35
**(By Plaintiffs Individually and on Behalf of the Collective Against All Defendants)**

144.    Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

145.    Defendants required Plaintiffs to pay monetary fees to Defendants and other Booby Trap employees who did not work in positions that are customarily and regularly tipped, in violation of 29 U.S.C. § 203(m).

146.    Defendants' requirement that Plaintiffs pay fees to Defendants and other Booby Trap employees violated the "free and clear" requirement of 29 C.F.R. § 531.35.

147.     Because Defendants violated the "free and clear" requirement of 29 C.F.R. § 531.35 as alleged above, they were not entitled to utilize the FLSA's tip-credit provision with respect to Plaintiffs wages.

148.     Because Defendants violated the "free and clear" requirement of 29 C.F.R. § 531.35, all monetary fees imposed on Plaintiffs are classified as illegal kickbacks.

149.     Plaintiffs are entitled to recover from Defendants all fees that Defendants required Plaintiffs to pay in order to work at Booby Trap, involving but not limited to house fees and tip sharing.

## FOURTH CAUSE OF ACTION

### FORCED TIPPING, 29 C.F.R. § 531.35
**(By Plaintiffs Individually and on Behalf of the Collective Against All Defendants)**

150.     Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

151.     Defendants required Plaintiffs to pay monetary fees to other Booby Trap's employees who did not work in positions that are customarily and regularly tipped, in violation of 29 U.S.C. § 203(m).

152.     Defendants' requirement that Plaintiffs pay fees to other Booby Trap's employees violated the "free and clear" requirement of 29 C.F.R. § 531.35.

153.     Because Defendants violated the "free and clear" requirement of 29 C.F.R. § 531.35 as alleged above, they were not entitled to utilize the FLSA's tip-credit provision with respect to Plaintiffs wages.

154.     Plaintiffs are entitled to recover from Defendants all fees that Defendants required Plaintiffs to pay other employees in order to work at Booby Trap, involving but not limited to forced tip sharing.

## FIFTH CAUSE OF ACTION

### VIOLATION OF FLORIDA CONSTITUTION, ART. X, § 24
### (By Plaintiffs Individually Against All Defendants)

155.     Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

156.     Defendants' failure to pay Plaintiffs any wages whatsoever constitutes a willful violation of Article X, § 24 of the Florida Constitution.

157.     Plaintiffs are therefore entitled to recover the applicable minimum hourly rate specified under Florida law for each hour worked during the five (5) years preceding the filing of this action, restitution of fees and fines unlawfully exacted from them by the Defendants, plus liquidated damages, attorneys' fees, and costs of litigation.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request of this Court the following relief:

1.     For compensatory damages according to proof at trial of at least $100,000;

2.     For special damages according to proof at trial;

3.     For restitution of unpaid monies;

4.     For attorneys' fees;

5.     For costs of suit incurred herein;

6.     For statutory penalties;

7.     For civil penalties;

8.     For pre-judgment interest;

9.     For post-judgement interest;

10.     For general damages in an amount to be proven at trial;

11.     For declaratory relief;

12.    For injunctive relief; and

13.    For such other and further relief as the tribunal may deem just and proper.

Dated: September 21, 2022

/s/ Raymond R. Dieppa
Raymond R. Dieppa, Esq.
Florida Bar No. 27690
**FLORIDA LEGAL, LLC**
12550 Biscayne Blvd., Suite 405
North Miami, FL 33181-2536
Telephone: (305) 901-2209
Fax: (786) 870-4030
*ray.dieppa@floridalegal.law*

Frank M. Mihalic
California Bar No. 344691
**CARPENTER & ZUCKERMAN**
8827. West Olympic Boulevard
Beverly Hills, California 90211
Telephone: (310) 273-1230
fmihalic@cz.law
 (*Pro Hac Vice* forthcoming)

***Attorneys for Plaintiffs***

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a trial by jury for all such triable claims.

Dated: September 21, 2022

/s/ Raymond R. Dieppa
Raymond R. Dieppa, Esq.
Florida Bar No. 27690
**FLORIDA LEGAL, LLC**
12550 Biscayne Blvd., Suite 405
North Miami, FL 33181-2536
Telephone: (305) 901-2209
Fax: (786) 870-4030
*ray.dieppa@floridalegal.law*

Frank M. Mihalic
California Bar No. 344691
**CARPENTER & ZUCKERMAN**
8827. West Olympic Boulevard
Beverly Hills, California 90211
Telephone:  (310) 273-1230
fmihalic@cz.law
 (*Pro Hac Vice* forthcoming)

*Attorneys for Plaintiffs*